# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE )<br>)<br>PHILIP L. HART, )<br>)<br>Debtor. )<br>_____ )<br>) <br>UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILIP L. HART, )<br>)<br>Defendant. )<br>_____ )<br>)<br>UNITED STATES TRUSTEE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILIP L. HART, )<br>)<br>Defendant. )<br>_____ )| Case No. 13-20039-TLM<br><br>Chapter 7<br><br><br><br><br><br><br><br><br>Adv. No. 13-07016-TLM<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Adv. No. 13-07017-TLM |

## MEMORANDUM OF DECISION
_____

  Chapter 7 debtor Philip Lewis Hart ("Debtor") filed a motion seeking to "seal" and keep confidential the terms of a settlement he reached with the Internal

MEMORANDUM OF DECISION - 1

Revenue Service ("IRS"). *See* Doc. No. 25 ("Motion").[1] Both the IRS and the United States Trustee ("UST") objected. Doc. Nos. 32, 34. On August 18, 2014, the Court heard oral argument and took the matter under advisement.

The Court determines the Motion is not well taken. An order will be entered denying the Motion and requiring the settlement agreement to be made part of the record herein.

## BACKGROUND AND FACTS

Debtor is embroiled in long-running disputes and litigation with federal and state taxing authorities. In addition to the bankruptcy proceedings before this Court, Debtor is involved in litigation before the U.S. District Court for the District of Idaho in *United States of America v. Philip L. Hart, et al.*, Case No. 2:11-CV-00513-EJL (the "Federal Action").[2] In the Federal Action, the IRS "seeks to reduce to judgment certain outstanding federal tax liabilities assessed against [Debtor] and to foreclose certain federal tax liens on a parcel of real property located in Kootenai County, Idaho[.]" *See* Federal Action, Doc. No. 1 at 2. The specifics of the disputes, contentions and circumstances are addressed at length in the parties' filings in the Federal Action and the bankruptcy cases.

---

[1] Unless otherwise indicated, all chapter, section and other statutory references are to the Bankruptcy Code, Title 11, U.S.C. §§ 101–1532. Rule references are to the Fed. R. Bankr. P. ("Bankruptcy Rules") and the Fed. R. Civ. P. ("Civil Rules").

[2] In order to provide background and context for the present Decision, the Court has taken judicial notice of the records in this adversary proceeding, in Debtor's underlying bankruptcy cases, and in the Federal Action. Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 2

The Federal Action was twice stayed by Debtor's voluntary chapter 13 cases, Case No. 12-20648-TLM ("*Hart I*") and Case No. 12-21220-TLM ("*Hart II*"), both of which were dismissed. On January 16, 2013, Debtor filed his currently pending chapter 7 bankruptcy, Case No. 13-20039-TLM ("*Hart III*"), but the automatic stay did not go into effect because he had two previous bankruptcies pending within the prior year. *See* § 362(c)(4)(A)(i). And the Court declined Debtor's request to impose a stay pursuant to § 362(c)(4)(B).[3] The Federal Action therefore continued notwithstanding the latest bankruptcy.

Only two proofs of claim have been filed in *Hart III*. The first was filed by the IRS in the total amount of $581,599.76, and is comprised of a $218,161.08 secured claim, a $10,770.81 priority unsecured claim under § 507(a)(8), and a nonpriority unsecured claim of $352,667.87. *See Hart III*, Claim No. 1-1. The second was filed by the Idaho State Tax Commission in the total amount of $45,705.15, and is comprised of a $39,364.79 priority unsecured claim under § 507(a)(8) and a nonpriority unsecured claim of $6,340.36. Debtor listed five other creditors on his bankruptcy schedules, though none have filed proofs of claim. The bar date for timely proofs of claim ran in 2013.[4]

---

[3] *See In re Hart*, 2013 WL 693013 (Bankr. D. Idaho Feb. 26, 2013). In the second of the two preceding chapter 13 cases, § 362(c)(3) resulted in the automatic stay having only a temporary duration, and the Court denied Debtor's motion to extend it. *See In re Hart*, 2012 WL 6644703 (Bankr. D. Idaho Nov. 23, 2012).

[4] In July 2013, Debtor filed an objection to the IRS' proof of claim and the ISTC's proof
(continued...)

MEMORANDUM OF DECISION - 3

On June 19, 2013, the IRS filed a complaint commencing an adversary proceeding, Adv. No. 13-07016-TLM, which sought a judgment holding Debtor's tax liabilities non-dischargeable pursuant to § 523(a)(1)(C). The IRS also included causes of action for denial of Debtor's discharge pursuant to § 727(a)(4)(A). On June 21, 2013, the UST also filed an adversary proceeding, Adv. No. 13-07017-TLM, seeking to deny Debtor's discharge pursuant to § 727(a)(2)(A), (a)(3), (a)(4)(A) and (a)(7).[5]

As noted, due to the absence of any stay in *Hart III*, the Federal Action continued. The record in that action reflects that between June 2013 and June 2014, Debtor and the IRS participated in multiple settlement conferences. On June 25, 2014, the parties notified the District Court they had come to a settlement agreement that "fully resolves issues between the United States and Mr. Hart in Mr. Hart's bankruptcy . . . as well as in [the Federal Action]."[6] They also stated that Debtor could file a motion in this Court to seal the settlement terms; that after

---

[4] (...continued)
of claim. *See Hart III* at Doc. Nos. 107, 112. Following various submissions, responses and briefs, and a hearing, the Court entered an order in September 2013, abstaining from addressing the objection to the IRS claim until after resolution of the Federal Action in which all the same issues were presented. *Id.* at Doc. No. 155. The objection to the ISTC claim has never been brought forward for hearing.

[5] Shortly after the initiation of these two adversary proceedings, the Court granted an unopposed motion of the IRS requesting consolidation of the cases, and requiring all future documents in the consolidated cases to bear both case captions but to be filed solely in Adv. No. 13-07016-TLM.

[6] *See* Federal Action, Doc. No. 130.

MEMORANDUM OF DECISION - 4

such motion was decided, the IRS would file a motion in this Court to approve the settlement and resolve any other related issues; and, after this Court's approval, they would file appropriate final settlement documents in the Federal Action.

Debtor's pending Motion seeks to avoid public disclosure of the terms of the settlement between Debtor and the IRS. The documents containing the terms of the settlement were given to the Court to review *in camera*, but have not been filed of record.

In general terms, the parties' agreement settles all disputes between Debtor and the IRS, including the extent of Debtor's present tax liabilities, future accruals on the same, how the tax liabilities will be paid or otherwise satisfied, and resolution of both the § 523(a) and the § 727(a) claims raised by the IRS. The agreement is expressly contingent on this Court's approval. The IRS agrees to "move to dismiss its [§ 727(a)] objections to Mr. Hart's discharge," and Debtor will then withdraw his answer to the IRS' complaint and allow an agreed upon form of judgment to be entered on the remaining § 523(a) claims. The UST's § 727(a) claims are not subject to the settlement agreement. The agreement between Debtor and the IRS therefore contains terms that deal with the possibility that a general discharge might be entered and how that will impact portions of the settled claims.

An express provision of the agreement indicates Debtor's desire to keep the terms of the settlement confidential, and his ability to file a motion with this Court

MEMORANDUM OF DECISION - 5

to effectuate that desire. It provides further, though, that the IRS "does not consent to, and may oppose" any such request to seal. The IRS did agree to keep the terms of the settlement agreement confidential until this Court ruled, and to abide by any ruling so made.[7]

**DISCUSSION AND DISPOSITION**

Bankruptcy Rule 7041 requires "notice to the trustee, the United States trustee and such other persons as the court may direct" when an action raising § 727(a) claims is settled and such claims are abandoned or dismissed. Debtor concedes that Bankruptcy Rule 7041 requires notice when § 727 claims are dismissed, but argues that this rule is or should be found inapplicable here (i) because Debtor has agreed to allow the IRS to enter a default judgment against him, and (ii) because the Court must seal the settlement documents as containing "scandalous" material.

**A.   Applicability of Bankruptcy Rule 7041**

Bankruptcy Rule 7041 governs the dismissal of adversary proceedings. It incorporates Civil Rule 41, but with an exception or qualification. It states:

> Rule 41 FR Civ P applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States

---

[7] The agreement also mentions this Court's approval of the settlement under Bankruptcy Rule 9019. That rule requires Court approval on notice and hearing of a compromise or a settlement by a "trustee." *See* Bankruptcy Rule 9019(a). The settlement here is between a creditor and the Debtor, and does not involve Debtor's trustee. The rule is not implicated and will not be discussed further.

MEMORANDUM OF DECISION - 6

>       trustee, and such other persons as the court may direct, and only on
>       order of the court containing terms and conditions which the court
>       deems proper.

In this District, Bankruptcy Rule 7041 is further implemented by LBR 7041.2, which allows a complaint objecting to entry of discharge or seeking to revoke a discharge to be dismissed only upon the filing of a motion that sets forth with particularity the grounds on which dismissal is based; the filing of an affidavit of the plaintiff disclosing any consideration received in connection with the requested dismissal; service of the motion and affidavit on the bankruptcy trustee; and notice to all creditors and a hearing. LBR 7041.2(a) – (d).[8]

Debtor argues that Rule 7041 should not apply "because the [IRS's] § 727 claim is to be compromised through a default, not a dismissal or waiver." But that argument mischaracterizes the settlement agreement which states that the IRS "as part of moving for approval of this settlement, will move to dismiss its objections to Mr. Hart's discharge in *In re Hart*, No 13-20039-TLM." The "default judgment" on which Debtor strongly relies is, under the whole of the agreement, a default judgment adjudicating the amount of tax liability and nondischargeability of that liability under § 523(a). Absent the planned and agreed "dismissal" of the § 727(a) causes of action, a default judgment on the complaint would cover both § 523(a) and § 727(a) aspects.

---

   [8] Given the provisions of LBR 2002.2(d), the notice could be of either an actual hearing or an opportunity to object and request a hearing (*i.e.*, "negative notice").

MEMORANDUM OF DECISION - 7

Thus, Debtor's focus on the characterization of the anticipated stipulated judgment as a "default judgment" is more stylistic than substantive. And more importantly, his arguments studiously ignore an express component of the agreement that requires the IRS to "move to dismiss" the § 727(a) claims.

Compliance with Bankruptcy Rule 7041 and LBR 7041.2 is required, as the IRS' approach to the settlement clearly contemplates. In meeting this obligation, and in providing what the Rule and Local Rule require, the terms of the settlement, including what the IRS is to receive under the settlement, must be disclosed.[9]

### B.     Sealing the bankruptcy records

Debtor also argues the settlement agreement must be sealed pursuant to § 107. Section 107(a) provides:

> Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

The exception relied on by Debtor is found in § 107(b)(2).[10] It states:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> . . .

---

[9] During oral argument, Debtor's counsel requested that, in the event his motion were denied, Debtor's Social Security number – a personal identifier under Bankruptcy Rule 9037 and LBR 9037.1 – be redacted from the settlement documents. The Court agrees such redaction is appropriate and required under the rules.

[10] Debtor raises no argument that sealing falls under any other provision of § 107.

MEMORANDUM OF DECISION - 8

>>(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

This Court has previously expressed its view on the subject of sealing its records. *In re Apply 2 Save, Inc.*, 2011 WL 1363771 (Bankr. D. Idaho April 11, 2011). Though the issue there arose in connection with a trustee's motion to approve a compromise under Bankruptcy Rule 9019, a portion of that discussion is apropos here:

> [N]ot only is sealing inconsistent with the sort of disclosure required under Rule 9019 and 2002 when compromises in bankruptcy are proposed, it is inconsistent with the general proposition that the judicial records and processes of the federal courts are open and public. *See* § 107(a) ("Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under [title 11] and the dockets of the bankruptcy court are public records and open to examination by any entity at reasonable times without charge."). The Ninth Circuit emphasized the policies involved in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006):
>
>> Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. . . . A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. . . . That is, the party must "articulate[] compelling reasons supported by specific factual findings," . . . that outweigh the general history of access, and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'" . . . In turn, the court must "conscientiously balance[] the competing interests" of the public and the party who seeks to keep certain judicial records secret. . . . After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without

MEMORANDUM OF DECISION - 9

> relying on hypothesis or conjecture."
>
> *Id.* at 1178–79 (internal citations omitted). *Kamakana* continues by acknowledging that "the strong presumption of access to judicial records applies fully to dispositive pleadings," a principle of disclosure "adopted . . . because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process[.]'" *Id.* at 1179 (citations omitted).
>
> These prudential and carefully circumscribed considerations of open judicial processes and public access to court records are no less important when dealing with bankruptcy court adjudication. Trustee has failed to establish that sealing the affidavit is justified by statute, rule, case law, or sound considerations of policy.

*Id.* at *2 (footnote omitted).

Here, Debtor did not suggest a good reason, much less a compelling reason, for this Court to depart from its view on the public and open nature of its records.

### 1. "Scandalous" under § 107(b)(2)

Debtor argued that the exception in § 107(b) regarding the disclosure of "scandalous" material should apply and the settlement terms should remain confidential. The Court also spoke to this concept in *Apply 2 Save, Inc.*:

> Section 107(b)(2) allows a court to seal its records in order to "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." This statutory provision is echoed in Fed. R. Bankr. P. 9018. However, the interpretation of the statutory terms "scandalous" or "defamatory" is narrow in order to adhere to the "strong public policy in favor of open court records." *Traversa v. Educ. Credit Mgmt. Corp. (In re Traversa)*, 2010 WL 4683920, at *7–8 (D. Conn. Nov. 5, 2010). Here, the argument appears to be that discussing the settling defendants' financial situations would reveal "sensitive information" about those parties. The Court cannot conclude that this factually would be so, since

MEMORANDUM OF DECISION - 10

> Trustee's affidavit discloses no detail and consists of nothing more than his conclusions about the ability of the settling defendants to respond meaningfully to a money judgment. However, even if such information were disclosed, it would not be "scandalous" or "defamatory." Though a discussion of the facts related to defendants' financial condition might arguably be considered to damage the defendants' reputations, "[i]njury or potential injury to . . . reputation will not suffice to deny public access[.]" *Powers v. Odyssey Capital Group, LLC (In re Mesaba Aviation, Inc.)*, 418 B.R. 756, 763 (8th Cir. BAP 2009) (citation omitted).

*Id.* at *1 (footnote omitted).

Less than a year after *Apply 2 Save* was issued, the Ninth Circuit again considered the question of sealing bankruptcy court records. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 430 (9th Cir. 2011) ("*Portland Diocese*"). After acknowledging the "strong presumption in favor of access" to judicial records under *Kamakana* and other cases, and noting that a party desiring to seal a court record generally must demonstrate not just good cause but compelling reasons, *see id.* at 429, it proceeded to discuss how § 107 "displaces the common law right of access in the bankruptcy context." *Id.* at 430. It stated:

> We perceive such a divergence between § 107 and the common law. The statute speaks directly to, and diverges from, the common law right of judicial access. First, the common law rule distinguishes between dispositive and non-dispositive motions, while § 107 covers all papers filed in a bankruptcy case. Second, the common law rule gives courts the discretion to create exceptions to the general rule of disclosure to the public. . . . By contrast, § 107 has only three exceptions, confidential business information, 11 U.S.C. § 107(b)(1), "scandalous or defamatory matter," *id.* § 107(b)(2), and "means of identification," *id.* § 107(c)(1)(A). Third, the common law rule gives

MEMORANDUM OF DECISION - 11

> courts discretion to determine whether to protect or disclose documents, while § 107 eliminates a court's discretion by making it mandatory for a court to protect documents falling into one of the enumerated exceptions. *See* 11 U.S.C. § 107(b) (specifying that "the bankruptcy court *shall*" provide specified protections on "request of a party in interest" (emphasis added)). Because § 107(b) imposes this mandatory requirement, it eliminates the balancing of public and private interests required by the common law rule if a document is scandalous or defamatory. Under § 107, the strength of the public's interest in a particular judicial record is irrelevant; if the exception pertains, the bankruptcy court must issue a protective order on a motion by the affected person or party.

*Id.* at 430–431 (citations omitted). Thus § 107 "supplants" and "preempts" the common law right of access in bankruptcy proceedings. *Id.* at 431.

The Ninth Circuit also considered the definition of "scandalous" for the purposes of § 107. *Id.* at 431–33. Using "standard tools of statutory analysis," the Circuit started with the "plain meaning" of the word, and ultimately adopted an "ordinary usage," dictionary-driven definition of scandalous such as "bringing discredit on one's class or position," "grossly disgraceful," "offensive to a sense of decency or shocking to the moral feelings of the community; shameful." *Id.* at 432 (citations omitted). It concluded that "[u]nder ordinary usage, then, matter is 'scandalous' if it is disgraceful, offensive, shameful and the like. . . . We therefore hold that the party seeking non-disclosure must establish only that the matter is scandalous as that word is commonly used." *Id.* at 432–33.

Debtor argues that the allegations that he failed to pay income taxes for twelve years meet the Ninth Circuit's definition of scandalous. The Court

MEMORANDUM OF DECISION - 12

disagrees. In *Portland Diocese*, the information at issue included allegations of child sexual abuse against two priests. The Ninth Circuit stated that "[u]nder the common usage of the word, allegations that a priest has sexually abused children are most assuredly 'scandalous'[.]" *Id.* at 433. The allegations against Debtor do not rise anywhere near that level.

Moreover, what the IRS has alleged is already a matter of public record, not just in these bankruptcy proceedings, but in the Federal Action as well. Indeed, Debtor's counsel admitted at oral argument that the details of the IRS' contentions, and Debtor's responses and defenses, have already been the subject of significant media reporting and discussion. While this is not to say that prior disclosure, intentional or inadvertent, moots a § 107(b)(2) request, in this case it underscores the non-scandalous nature of the matter.

The Court has reviewed carefully the material submitted for *in camera* evaluation, and concludes that the request for sealing or confidentiality under § 107 is not well taken.

## CONCLUSION

For all the reasons stated above, the Court concludes Debtor's motion shall be denied. The IRS will submit a form of order in accord with this Decision.

MEMORANDUM OF DECISION - 13

DATED: September 2, 2014



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 14